IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS DIXEY,                                           CV 07-101-MA

        Petitioner,                                  OPINION AND ORDER

  v.

CHARLES DANIELS, Warden, FCI-
Sheridan,

        Respondent.


    DENNIS DIXEY
    FCI-Sheridan
    PO Box 5000
    Portland, OR  97378-5000

        Petitioner, *Pro Se*

    KARIN J. IMMERGUT
    United States Attorney
    SCOTT ERIK ASPHAUG
    Assistant United States Attorney
    United States Attorney's Office
    District of Oregon
    1000 SW Third Avenue, Suite 600
    Portland, OR  97204-2902

        Attorneys for Respondent

MARSH, Judge:

    Petitioner, an inmate in the custody of the Federal Bureau of Prisons (BOP), currently housed at the Federal Correctional Institution (FCI) Sheridan, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2241.

1- OPINION AND ORDER

**Background**

In May 2006 defendant was convicted of Assault with a Deadly Weapon Within Indian Country, in violation of 18 U.S.C. §§ 113(a)(3) and 1153. He was sentenced to 46 months imprisonment, 3 years of supervised release, and ordered to pay restitution in the amount of $30,000. The sentencing order included a "schedule of payments" page, which provided that the entire restitution amount was due immediately, and that "Defendant shall submit nominal payments of not less than $25 per quarter while incarcerated [,] through the Inmate Financial Responsibility Program."

Petitioner did not pay any restitution prior to the commencement of his sentence. When he arrived at FCI Sheridan, the BOP set a schedule for petitioner's payment of restitution, under the BOP's Inmate Financial Responsibility Program (IFRP). *See* 28 C.F.R. § 545.10, et seq. Under the IFRP, the BOP encourages sentenced inmates to voluntarily fulfill their legitimate financial obligations by offering incentives to inmates who comply with the provisions of their financial plan. *See* 28 C.F.R. § 545.10. BOP staff develop a financial plan for each inmate, based on the inmate's ability to pay. Incentives for compliance are listed in the IFRP Program Statement, 28 C.F.R. § 545.11, couched in terms of the consequences of not complying:

(1) Where applicable, the Parole Commission will be notified of an inmate's failure to participate;

(2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough);

(3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;

(4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;

(5) The inmate will not be placed in UNICOR.  Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months.  Any exception to this requires approval from the Warden;

(6) The inmate shall be subject to a monthly commissary spending limitation more stringent than those for all inmates.  This more stringent commissary spending limitation for IFRP refuse status inmates shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;

(7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);

(8) The inmate will not be placed in a community-based program;

(9) The inmate will not receive a release gratuity unless approved by the Warden;

                    ***

(11) The inmate will not receive an incentive for participation in residential drug treatment programs; and

(12) The inmate's score on "Responsibility" on the Custody Classification form (BP-338) is to be zero.

The Constitutionality of the IFRP is not at issue here.

3- OPINION AND ORDER

Instead, petitioner challenges the BOP's authority to increase his restitution payment amount from $25 per quarter, to $300 per quarter.

## Discussion

The parties agree that in February 2007 petitioner began paying $300 per quarter toward restitution, based on an assessment by BOP staff, pursuant to the IFRP, that petitioner's ability to pay had increased.  Petitioner does not expressly dispute respondent's contention that he "agreed" to pay $300 per quarter at this time, and his signature does appear on a document dated January 12, 2007, indicating that he agreed.  Presumably, however, petitioner only agreed in order to avoid the consequences of "IFRP refuse status."

Respondent expressly disputes petitioner's contention that BOP has refused to respond to requests for administrative review from petitioner.  Respondent avers that petitioner has "submitted no Administrative Remedies since his incarceration began."  However, respondent does not contend that this court should dismiss petitioner's complaint on the basis of failure to exhaust his administrative remedies.  Accordingly, I turn to the merits of petitioner's claim.

According to petitioner, the BOP lacks authority to increase the amount or frequency of restitution payments beyond the amount set by the sentencing court's schedule, because doing so violates

4- OPINION AND ORDER

the Ninth Circuits' pronouncements in *United States v. Gunning*, 339 F. 3d 948 (9th Cir. 203)(*Gunning I*), and *United States v. Gunning*, 401 F. 3d 1145 (9th Cir. 2005)(*Gunning II*), that only the sentencing court has the authority to set a schedule for restitution payment during petitioner's incarceration, and the court may not delegate that authority to the Probation Office (*Gunning I*) or the BOP (*Gunning II*).

Respondent contends, essentially, that the BOP does have authority to increase the restitution payment in this case because the sentencing court established a minimum schedule for restitution payment during incarceration, but properly left open for the BOP to assess whether petitioner could pay more under the IFRP. Thus, according to respondent, this case does not suffer from the same infirmities as the *Gunning* cases.

I concur with respondent that this case does not present the separation of powers issue upon which *Gunning I* and *Gunning II,* were remanded (*inter alia)*, and upon which I granted habeas corpus relief in *Soroka v. Daniels*, 467 F. Supp 2d 1097 (U.S. Dist. OR 2006). Unlike in those cases, here the sentencing court set a schedule for making restitution payments during incarceration. Thus, the court did not unlawfully delegate that authority to the BOP. Though the Ninth Circuit has not yet considered whether the BOP may increase an inmate's restitution payment amount without a court order, I find that allowing the

5- OPINION AND ORDER

BOP to modify the payment schedule in any way, without court approval, amounts to an equally impermissible delegation of authority as allowing the BOP to create the payment schedule.

The "not less than" language in petitioner's restitution payment schedule is thus properly interpreted to mean petitioner could choose to pay more; not that the BOP could increase his payment amount based on the IFRP assessment of his ability to pay. See 28 C.F.R. § 545.11 (procedure for developing inmate's "financial plan"). Here, while petitioner "agreed" to pay more, he attests to this court that he only agreed in order to avoid the adverse consequences of not agreeing. Accordingly, I find the the BOP's modification of petitioner's restitution payment schedule was not in accordance with the law. See 5 U.S.C. § 706(2)(a)(agency actions will be upheld unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

## CONCLUSION

Based on the foregoing, petitioner's habeas corpus petition (#2) is GRANTED.

IT IS SO ORDERED.

DATED this _5_ day of July, 2007.

                                           /s/ Malcolm F. Marsh
                                           Malcolm F. Marsh
                                           United States District Judge